UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2013 JUN 17 P 4: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

PAUL JONES

Plaintiff

Civil Action No. 1:13-CV-11274-JCB

V.

CENTRAL PORTFOLIO RECOVERY

GC SERVICES LIMITED PARTNERSHIP

FINANCIAL RECOVERY SERVICES INC.

DIVERSIFIED CONSULTANT, INC

FMA ALLIANCE, LTD

CLIENT SERVICES, INC.

Defendants

## FIRST AMMENDED COMPLAINT

### Parties

1. The Plaintiff is a resident of Stoughton, County of Norfolk, Massachusetts and a citizen of the United States.

2. Defendant Central Portfolio Recovery (hereafter Central) is a Debt Collector with a usually place of business of 120 Corporate Boulevard Norfolk, VA 23502 and is registered to collect debts in Massachusetts.

3. Defendant GC Services Limited Partnership (hereafter GC) is a Debt Collector with a usually place of business of, 10040 N. 25th Avenue, Phoenix, AZ 85021 and is not registered to collect debts in Massachusetts.

24. Each call was initiated by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA for the purpose of collecting a non-existent debt and solicitation of Plaintiff money to pay the debt, therefore, each was a "telephone solicitation" as defined in 47 U.S.C. §227(a) (3).

25. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA left several voice messages on Plaintiff answering service with a computerized voice.

26. All text in red is an automatic violation of the FDCPA because it is after a reasonable time 9pm.

27. Defendant FMA made these prohibited calls to Plaintiff on at least the following dates and times from the following numbers 877-839-9070 and 866-207-6903.

   03/29/2011   9:13 am   781-344-4351 from 877-839-9070

   03/30/2011   936 am    781-344-4351 from 866-207-6903

   03/30/2011   620 pm    781-344-4351 from 866-207-6903

28. Defendant GC SERVICES made these prohibited calls to Plaintiff on at least the following dates and times looking for another person other than Plaintiff (Paul Jones) from the following numbers 786-419-4893 and 877-710-8001.

   | Date | Time | From | To |
   |---|---|---|---|
   | 05/25/2012 | 11:10AM | 561-283-1001 from | 877-710-8001 |
   | 05/31/2012 | 9:10 AM | 561-283-1001 from | 877-710-8001 |
   | 06/01/2012 | 8:54 AM | 561-283-1001 from | 877-710-8001 |
   | 06/05/2012 | 9:16 AM | 561-283-1001 from | 877-710-8001 |
   | 06/05/2012 | 7:36AM | 561-283-1001 from | 877-710-8001 |
   | 06/08/2012 | 10:27AM | 561-283-1001 from | 877-710-8001 |
   | 06/11/2012 | 3:00PM | 561-283-1001 from | 877-710-8001 |
   | 06/13/2012 | 1:53 PM | 561-283-1001 from | 877-710-8001 |

29. Defendant Diversified made these prohibited calls to Plaintiff on at least the following dates and times looking for another person other than Plaintiff (Paul Jones) from the following numbers 305-224-1227 and 305-224-1441.

   | Date | Day | Time | From | To |
   |---|---|---|---|---|
   | 04/10/2013 | Wed | 05:10 PM | 3057484151 | 3052241227 |
   | 04/10/2013 | Wed | 09:26 PM | 3057484151 | 3052241227 |
   | 04/11/2013 | Thu | 12:39 AM | 3057484151 | 3052241227 |
   | 03/25/2013 | Mon | 02:56 PM | 3057484151 | 3052241441 |
   | 03/25/2013 | Mon | 08:06 PM | 3057484151 | 3052241441 |

| Date | Day | Time | From | To |
|---|---|---|---|---|
| 03/26/2013 | Tue | 12:03 PM | 3057484151 | 3052241441 |
| 03/26/2013 | Tue | 07:25 PM | 3057484151 | 3052241441 |
| 03/27/2013 | Wed | 12:41 PM | 3057484151 | 3052241441 |
| 03/27/2013 | Wed | 09:46 PM | 3057484151 | 3052241441 |
| 03/28/2013 | Thu | 02:43 PM | 3057484151 | 3052241441 |
| 03/28/2013 | Thu | 08:34 PM | 3057484151 | 3052241441 |
| 03/29/2013 | Fri | 12:23 AM | 3057484151 | 3052241441 |
| 03/30/2013 | Sat | 04:03 PM | 3057484151 | 3052241441 |
| 04/01/2013 | Mon | 04:41 PM | 3057484151 | 3052241441 |
| 04/01/2013 | Mon | 10:58 PM | 3057484151 | 3052241441 |
| 04/02/2013 | Tue | 10:16 PM | 3057484151 | 3052241441 |

30. Defendant Central Portfolio called Plaintiffs wireless number at least 30 times looking for Mr. Michael Clark Plaintiff informed Defendant that there is no Michael Clark and Plaintiff now owns this wireless number and they promised to update their records to reflect that Mr. Michael Clark no longer owns the number 7813444351.

31. Defendant Central Portfolio called Plaintiff using an Automatic Dialing System that had the capability to store numbers, Defendant Central Portfolio call several of Plaintiffs numbers after Plaintiff informed them that Michael Clark does not own the number anymore and Plaintiff does not know Mr. Michael Clark.

32. Defendant Central left several messages on Plaintiff answering service with a computerized voice looking for Mr. Michael Clark after Defendant Central promised to remove Plaintiffs number from their call log.

33. Defendant Central Portfolio made these prohibited calls to Plaintiff on at least the following dates and times from the following numbers: 8883152987,8888266045,8009276152

| Date | Day | Time | From | To |
|---|---|---|---|---|
| 02/06/2013 | Wed | 10:00 PM | 7813444351 | 8883152987 |
| 03/06/2013 | Wed | 08:38 PM | 7813444351 | 8883152987 |
| 03/26/2013 | Tue | 07:51 PM | 7813444351 | 8883152987 |
| 04/12/2013 | Fri | 07:59 PM | 7813444351 | 8883152987 |
| 04/16/2013 | Tue | 05:50 PM | 7813444351 | 8883152987 |
| 04/17/2013 | Wed | 06:45 PM | 7813444351 | 8883152987 |
| 12/19/2012 | Wed | 09:31 PM | 7813444351 | 8888266045 |
| 01/09/2013 | Wed | 08:24 PM | 7813444351 | 8888266045 |
| 10/23/2012 | Tue | 07:36 PM | 4133282070 | 8009276152 |

| | | | | |
|---|---|---|---|---|
| 10/24/2012 | Wed | 04:10 PM | 4133282070 | 8009276152 |
| 11/12/2012 | Mon | 05:57 PM | 4133282070 | 8009276152 |
| 12/03/2012 | Mon | 05:07 PM | 6172470800 | 8009276152 |
| 12/07/2012 | Fri | 08:48 PM | 7813443456 | 8009276152 |
| 12/07/2012 | Fri | 08:49 PM | 7813444351 | 8009276152 |
| 12/12/2012 | Wed | 06:21 PM | 9784256336 | 8009276152 |
| 12/19/2012 | Wed | 04:54 PM | 4133282070 | 8009276152 |
| 01/04/2013 | Fri | 06:24 PM | 6172470800 | 8009276152 |
| 01/10/2013 | Thu | 06:11 PM | 7813443456 | 8009276152 |
| 01/10/2013 | Thu | 06:12 PM | 7813444351 | 8009276152 |
| 01/15/2013 | Tue | 07:16 PM | 9784256336 | 8009276152 |
| 01/28/2013 | Mon | 06:46 PM | 4133282070 | 8009276152 |
| 01/29/2013 | Tue | 09:02 PM | 4133282070 | 8009276152 |
| 02/01/2013 | Fri | 01:24 AM | 7813444351 | 8002801565 |
| 02/12/2013 | Tue | 10:56 PM | 7813444351 | 8002801565 |
| 04/02/2013 | Tue | 08:57 PM | 7813444351 | 8002801565 |
| 04/09/2013 | Tue | 07:27 PM | 7813444351 | 8002801565 |
| 02/05/2013 | Tue | 11:08 PM | 7813444351 | 8009182295 |
| 02/19/2013 | Tue | 11:41 PM | 7813444351 | 8009182295 |
| 03/04/2013 | Mon | 07:13 PM | 7813444351 | 8009182295 |
| 03/08/2013 | Fri | 06:50 PM | 7813444351 | 8009182295 |

34. Defendant FRS used a computerized voice to leave messages on Plaintiffs wireless number answering service.

35. Defendant FRS made these prohibited calls to Plaintiff on at least the following dates and times from the following numbers: 763-503-5206.

| | | | | | |
|---|---|---|---|---|---|
| 11/18/2011 | Fri | 08:34 PM | 00:01:54 | 7813444352 | 7635035206 |
| 11/28/2011 | Mon | 02:56 PM | 00:00:28 | 7813444352 | 7635035206 |
| 11/28/2011 | Mon | 02:56 PM | 00:00:27 | 4133282070 | 7635035206 |
| 03/17/2012 | Sat | 08:21 AM | 00:00:25 | 7813444352 | 7635035206 |

36. Defendant Client used a computerized voice to leave messages on Plaintiffs wireless number answering service.

37. Defendant Client made these prohibited calls to Plaintiff on at least the following dates and times from the following numbers: 305-851-5219

    07/26/2012 Thu 04:43 pm to 978-425-6336 from 305-851-5219

    08/02/2012 Thu 11:28 am  to 978-425-6336 from  305-851-5219

    08/07/2012 Tue 12:49am  to  781-344-3456 from  305-851-5219

    08/07/2012 Tue  12:51pm  to  781-344-3456 from  305-851-5219

    08/07/2012 Tue  01:41pm to   617-247-0800 from  305-851-5219

    08/21/2012 Tue  12:51pm to  781-344-4351 from  305-851-5219

38. Plaintiff answered, at least two additional calls from Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA, where his caller id showed a number "unknown," and where Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA did not identify their self at the commencement of the call which is another violation of the TCPA for which there is no private right of action.

39. Only after answering the caller ID blocked calls did Plaintiff realize it was Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA calling.

40. After receipt of the first prohibited call, Plaintiff made attempts to demand Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA me later to cease and desist all calls.

41. Plaintiff tried to mitigate damages with defendants Client, GC, FRS, Diversified, Central Portfolio and FMA.

42. FMA stated they have researched its records and has no record of calling Plaintiff and that FMA will not accept waiver of service.

43. Plaintiff is in possession of a ledger that he documented all calls that came in.

44. Plaintiffs first attempt to stop the calls was in a letter dated March 29, 2013 that was mailed to Defendant Diversified.

45. Plaintiff's second attempt was in a phone call to Defendant Diversified on or about January 16, 2012 about.

46. Plaintiffs first attempt to stop the calls was in a letter dated December 20, 2012 that was mailed to Defendant Central Portfolio.

47. Plaintiff's spoke with Defendant Central Portfolio several times and told the representative that they had the wrong number the representative promised to remove Plaintiffs number from the call log, but she did not do it, also plaintiff sent a MGL 93a and it was ignored and then sent a Notice of pending Lawsuit.

48. Plaintiff has over 15 recording from Defendant Central Portfolio looking for Mr. Michael Clark.

49. Plaintiffs spoke with FRS representatives on at least 3 occasions and told them to stop all phone calls, it was ignored.

50. Plaintiff mailed Defendant FRS a Massachusetts MGL 93A Demand letter on April 1, 2013 and Defendant FRS ignored Plaintiffs letter.

51. Defendant FRS has called Plaintiff over 14 times to collect a nonexistent debt.

52. Plaintiffs sent a letter dated December 11, 2012 that was mailed to Defendant FRS to inform them of Plaintiff Notice to sue notice defendants never replied.

53. Plaintiff spoke with FMA, s agent Marc Lanni on or about April 10, 2013 to mitigate damages, he stated that FMA has never called my numbers.

54. At no time did Plaintiff provide prior express permission to Defendants GC, FRS, Diversified, Central Portfolio and FMA to call his wireless number using equipment that has the capacity to store or produce random or sequential telephone numbers and / or with the use of a predictive dialer.

55. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA does not have, and has never had an established business relationship with Plaintiff.

56. Despite the letters and or phone calls from Plaintiff, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA continued to place prohibited calls to Plaintiff's assigned wireless number for which Plaintiff was charged for the call.

57. Plaintiff seeks damages for any and all calls that Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made to Plaintiff's telephone number in violation of the TCPA and the rules, regulations and orders promulgated by the FCC including but not limited to damages for any calls that defendant made which Plaintiff is unaware of, for Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA failure to provide a copy of its do-not-call policy, failure to properly scrub the national DNC as required by the FCC, failure to properly maintain and update its company specific DNC call list, and failure to accommodate Plaintiff's requests to stop calling, failure to train and monitor its employees about the existence of both the national and state required lists and to enforce the requirement that DNC requests be recorded, failure to stop all calls to the subscriber made within 10 years of consumer request to place his number on company DNC, failure to employ a version of the national "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and to maintain records documenting this process, failure to sufficiently identify individual telemarketer and or debt collectors name, his or her employer caller and business entity on whose behalf the calls were being made, or the causing Defendants FMA, GC, FRS, Diversified and Central Portfolio telephone number to be blocked from the subscriber's caller ID.

58. **Plaintiff was hospitalized on or about June 7, 2013 experienced sick nausea, sleepless nights, and loss of appetite do to stress caused by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and has all paperwork to prove it.**

59. On May 11, 2012, the Seventh Circuit in *Soppet v. Enhanced Recovery Company, LLC*, 2012 U.S. App. LEXIS 9560 (7th Cir. May 11, 2012), issued an opinion illustrating the risks of using an automated dialer to place calls to a stale cell phone number.

60. In *Soppet*, the defendant was accused of making a call to a cell phone number using an automated dialer regulated by the TCPA, and that it **had not received consent from the consumer who had been assigned the number. Such consent is required prior to making a lawful call to a cell phone using an auto-dialer regulated by the TCPA. The defendant, who had received consent**

from a prior consumer assigned the number, said it did not know that the telephone number had been reassigned.

61. The Seventh Circuit ruled that a consumer who owned the telephone number previously used by another consumer could bring a cause of action under the TCPA because that person did not consent to the calls. "[O]nly the consent of the subscriber assigned to that cell number at the time of the call (or perhaps the person who answers the phone) justifies an automated or recorded call." *Id.* at *6.

62. The Seventh Circuit considered at length the definition of a "called party," a phrase used seven times, all told, in the language of the TCPA, 47 U.S.C. § 227, *et seq*. Because four of these times unmistakably "denote the current subscriber ... [and] one denotes whoever answers the call (usually the subscriber)[,]" a called party must refer to the current subscriber. *Id.* at *7-8. The defendant argues that because people are moving from landlines to cell service, it makes it riskier to use predictive dialers, which in the long run will lead to higher prices across the board. *Id.* at *11. The court, however, listed three options to ensure that dialers need not be abandoned due to the risk that the subscriber had changed for a given number:

"Have a person make the first call, then switch to a predictive dialer after verifying that Cell Number still is assigned to Customer."

"Use a reverse lookup to identify the current subscriber to Cell Number."

"Ask Creditor, who obtained Customer's consent, whether Customer still is associated with Cell Number – and get an indemnity from Creditor in case a mistake has been made (Indemnity may be automatic under ¶10 of the *2008 TCPA Order*, which states that calls placed by a third-party collector on behalf of a creditor are treated as having been made by the creditor itself.)"

63. The Seventh Circuit's opinion in *Soppet* emphasizes an important point – businesses must recognize that auto-dialing old cell phone numbers is risky. Further, *Soppet* counsels that businesses should

**use due diligence to ensure that they are contacting the intended consumer. For example, if consent is in question because of the passage of time, *Soppet* says that it is important to have an initial, manual call in order to obtain recorded consent from the consumer to receive calls from an auto-dialer.**

64. 47 U.S.C. § 227(b) provides, in relevant part:

> (1) PROHIBITIONS.-It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States- (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice- ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

65. **Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA** repeatedly violated 42 U.S.C. § 227(b) by attempting to collect a debt from Plaintiff (Paul Jones) using automated calls placed to Plaintiffs wireless telephone number.

66. 47 U.S.C. § 227(b)(3) provides:

> PRIVATE RIGHT OF ACTION.-A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award

to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. (Emphasis added)

67. Plaintiffs seeks $500 in damages, trebled to $1,500 if the evidence shows that **Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA** willfully or knowingly placed the automated calls in violation of this law. For each automated call Defendants **Client, GC, FRS, Diversified, Central Portfolio and FMA** made to Plaintiff.

68. Plaintiff also seeks an injunction prohibiting any future such automated call placed to his wireless telephone number.

## CAUSES OF ACTION
### COUNT I

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. §227(b) (3) (B) BY Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA**

69. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

70. The plain language of **47 USC § 227(b)(1)(A)** makes clear a violation of the TCPA occurs when an autodialed call is made to a cell (wireless) phone without the prior express consent of the called party. (**2008 TCPA Order,** ¶ 9; see also **47 C.F.R. 64.1200**.) In short, the elements that must be established to prove a *prima facie* violation of the cell phone provisions of the TCPA are:

> call to a cell (wireless) phone by either:
> (a) using an "automatic telephone dialing system," and/or
> (b) leaving an artificial or pre-recorded message.
> (2) Where the call is made without the prior express consent of the recipient, and
> (3) **Where the recipient is charged for the call**.

71. On information and belief, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA used an automatic telephone dialing system as defined by 47 USC § 227 (a)(1) when it made each and every call to Plaintiffs wireless numbers for which the called party is charged in the last four years.

72. On information and belief, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA did not have Plaintiff's prior express permission prior to contacting Plaintiff on his wireless number using an automatic telephone dialing system.

73. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made the calls to Plaintiff willfully.

74. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made the calls to Plaintiff knowingly.

75. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA acts in making the calls to Plaintiff were not accidental.

76. Plaintiff's privacy has been invaded as a result of Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA acts.

77. Plaintiff request damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of at least $500 for each such act that this Court finds were not made willfully or not made knowingly;

78. Plaintiff request damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of $1,500 for each such act that this Court finds were made willfully or were made knowingly; and such other relief as the Court may deem just and proper.

79. Plaintiff became hospitalized on or about June 7, 2013 experienced sick nausea, sleepless nights, and loss of appetite do to stress caused by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA for Actual and or Statutory damages, and attorney's fees and costs Emotional distress and mental anguish damages pursuant to MGL 93a.

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §227(c) (5) BY Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA

80. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

81. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made telephone solicitation calls to Plaintiff.

82. Plaintiff requested Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA to stop calling him.

83. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made these telephone solicitations despite Plaintiff's number having been registered on the national "Do Not Call List.

84. Plaintiff requested a copy of Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA do-not-call policy when Plaintiff spoke with them or when Plaintiff rote Cease & Desist letters.

85. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA failed to provide a copy of its do-not-call policy as requested by Plaintiff.

86. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA failed to place Plaintiff on its do-not-call-list.

87. On information and belief, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA fails to properly maintain or train its personnel how to comply with the TCPA and the FCC rules and regulations.

88. After receipt of a cease and desist request, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA continued to make the calls to Plaintiff wireless numbers for which Plaintiff was charged for

the call.

89. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA continued to make prohibited calls to Plaintiff wireless number for which Plaintiff was charged for the call after Plaintiff made his request for the do-not-call policy several times.

90. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made the calls to Plaintiff willfully.

91. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA made the calls to Plaintiff knowingly.

92. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA acts in making the calls to Plaintiff wireless number for which Plaintiff was charged for the call were not accidental.

93. Plaintiff privacy rights have been damaged by the above acts.

94. Plaintiff request damages pursuant to 47 U.S.C. § 227 (c)(5) for each and every failure to abide by the TCPA and FCC's do-not-call-list requirements in the amount of at least $500 for each such act that this Court finds were not made willfully or not made knowingly;

95. Plaintiff request damages pursuant to 47 U.S.C. § 227 (c)(5) for each and every failure to abide by the do-not-call-list requirements in the amount of $1,500 for each such act that this Court finds were made willfully or were made knowingly; and such other relief as the Court may deem just and proper.

96. Plaintiff became hospitalized on or about June 7, 2013 experienced sick nausea, sleepless nights, and loss of appetite do to stress caused by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA for Actual and or Statutory damages, and attorney's fees and costs.

## COUNT III

## VIOLATION OF FAIR DEBT COLLECTION

PRACTICES ACT (FDCPA), 15 U.S.C. §1692

BY Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA

97. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

98. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a (3).

99. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA within the meaning of the FDCPA, 15 U.S.C. §1692(a).

100.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA is a debt collector within the meaning of the FDCPA, 15 U.S.C. §1692a (6).

101.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated the FDCPA by calling Plaintiffs wireless number after 9pm on several occasions.

102.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated the FDCPA. Defendant's violations include, but are not limited to, the following:

103.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated 15 U.S.C. **1692d** (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

104.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated 15 U.S.C. §1692e (10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

105.   Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a

judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

106. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated Caused any charges to be made to the consumer, e.g., collect calls

107. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated **15 U.S.C. § 1692d** prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

108. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated **15 U.S.C. § 1692d (5)** specifically forbids a collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

109. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA and violated **15 USC 1692c** (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

110. Plaintiff became hospitalized on or about June 7, 2013 experienced sick nausea, sleepless nights, and loss of appetite do to stress caused by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA.

111. Defendants are liable to Plaintiff for his actual damages and additional damages not to exceed $1,000. 15 U.S.C. § 1692k (a) (l) & (2)(A). Such actual damages include, but are not limited to, Plaintiffs emotional distress and mental anguish.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA for actual or statutory damages, and punitive damages, attorney's fees and costs pursuant 15 U.S.C. § 1692k (a) (3)..

## COUNT IV

## VIOLATION OF MCPA

## MGL c. 93A§ 2.et seq

### By Employing Unfair & Deceptive Acts

### BY Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA

112. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

113. Plaintiff is a consumer within the meaning of the MGL 93a.

114. The Massachusetts Debt Collection Regulations 940 CMR 7.07, provide in relevant part:

> **It shall constitute an unfair or deceptive act or practice to engage in any of the following practices to collect or attempt to collect any debt:**
> \*\*\*\*
>
> **(8) Any false, deceptive, or misleading representation, communication, or means in connection with the collection of any debt or to obtain information concerning a debtor.**

115. As furthermore, by virtue of violating the above Massachusetts Debt Collection Regulations, Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA committed an unfair or deceptive act under M.G.L. c. 93A § 9 and, as such, the Plaintiff is entitled to double or treble damages plus reasonable attorney's fees.

116. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA are debt collectors within the meaning of the MGL 93a.

117. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated the MCPA MGL93a. Defendants' violations include, but are not limited to, the following:

118. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated MCPA. MGL 93a by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

119. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated MCPA. MGL 93a by violating the FDCPA & the TCPA which is an automatic violation of the Massachusetts Unfair & Deceptive Trade Practices Act. MGL 93a.

120. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated MCPA. MGL 93a by calling Plaintiffs wireless number after 9pm.

121. Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA violated MCPA. MGL 93a by calling Plaintiffs wireless number after 9pm.

121. Plaintiff became hospitalized on or about June 7, 2013 experienced sick nausea, sleepless nights, and loss of appetite do to stress caused by Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA.

**WHEREFORE**, Plaintiff demands judgment for damages against Defendants Client, GC, FRS, Diversified, Central Portfolio and FMA for actual or statutory damages, and punitive damages, Treble Damages, attorney's fees and costs, and or Triple Damages pursuant to MCPA MGL 93a.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully Submitted

Dated: June 17, 2013

Paul Jones

572 Park Street

# VERIFICATION OF COMPLAINT AND CERTIFICATION

## STATE OF MASSACHUSETTS

## Plaintiff, Paul Jones, states as follows:

I am the Plaintiff in this civil proceeding.
I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or law.

I believe that this civil complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Paul Jones, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted

Dated: June 17, 2013
Paul Jones
572 Park Street
Stoughton, Ma 02072
Pj22765@gmail.com
888-655-3004

*/s/ Paul Jones*